# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| RHONDA DILLOW, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 1:16-cv-612 |
| | ) |
| v. | ) JUDGE TIMOTHY S. BLACK |
| | ) |
| HOME CARE NETWORK, INC., | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Civil Rule 56, Defendant Home Care Network, Inc. moves for a partial summary judgment as to any claims for violation of the Fair Labor Standards Act prior to November 12, 2015 as the regulations that required the payment of overtime to home health care workers did not go effect any earlier than November 12, 2015.

Respectfully submitted,

*/s/ Dale D. Cook*
Dale D. Cook            (0020707)
ISAAC WILES BURKHOLDER & TEETOR, LLC
Two Minerva Place, Suite 700
Columbus, Ohio  43215-5098
Telephone:       (614) 221-2121
Facsimile: (330) 365-9516
Email:     dcook@isaacwiles.com
Stuart A. Strasfeld         (0012399)
ROTH, BLAIR, ROBERTS, STRASFELD & LODGE, L.P.A.
100 East Federal Street, Suite 600
Youngstown, Ohio  44503
*Attorneys for Defendant*
*Home Care Network, Inc.*

## MEMORANDUM IN SUPPORT OF MOTION

**I.     INTRODUCTION**

The Plaintiff, Rhonda Dillow ("Dillow") seeks to hold Home Care Network, Inc. ("Home Care") liable for an alleged failure to comply with regulations before these regulations actually went into effect.

The D.C. District Court stayed and vacated the Department of Labor ("DOL") regulations that radically changed the "companionship exemption," and this court in *Bangoy v. Total Home Care Solutions LLC,* S.D. Case No. 1;15-CV-573, 2015 WL 12672727 ("*Bangoy*") correctly held that an employer could not violate regulations that had not gone into effect due to a valid court order vacating those regulations.  In its controlling ruling, this court properly emphasized that its position was consistent with the DOL's own decision not to begin enforcement of the new companionship regulations until November 12, 2015, at the earliest.

**II.     LEGAL BACKGROUND**

    **A.     Federal Companionship Exemption**

        **1.     Fair Labor Standards Act**

Much of the relevant background is taken almost verbatim from the filings and this court's opinion in *Bangoy*.  The Fair Labor Standards Act of 1938 ("FLSA") requires that employers pay overtime compensation to covered employees for hours worked in excess of 40 hours in a workweek.  29 U.S.C. § 207 ("Section 207").  However, employers were not required to pay overtime compensation to employees who fell within the exemptions set forth in Section 213. 29 U.S.C. § 213 ("Section 213").

In 1974, Congress amended the FLSA to add the "companionship exemption" to Section 213. The companionship exemption stated that "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves is exempt from the FLSA's overtime requirement." 29 U.S.C. § 213(a)(15).

### 2. Department of Labor's 1975 Regulations

The following year, the DOL issued regulations implementing the 1975 FLSA amendments, including the companionship exemption. Two of the 1975 regulations, in particular, are relevant to this case.

First, the "Third Party Employment" regulation explained that the statutory companionship exemption applied to caregivers "who are employed by an employer or agency other than the family or household using their services." 29 C.P.R. § 552.109.

Second, the "Companionship Services" regulation defined the companionship services referenced by the statutory companionship exemption to mean "those services which provide fellowship, care, and protection" for elderly or infirm persons unable to care for themselves, excluding services performed by "trained personnel" including nurses. 29 C.P.R. § 552.6. The Companionship Services regulation also allowed employees who were exempt under the companionship exemption to perform "household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services." *Id*

### 3. *Coke* Decision and Failed Amendment Attempts

In 2007, the U.S. Supreme Court rejected a challenge to the 1975 Third Party Employment Regulation. *See Long Island Care at Home, Ltd. v. Coke,* 551 U.S. 158, 127 S.Ct. 2339, 168 L.Ed. 2d 54 (2007). In its holding, the Supreme Court stated that "[t]he question

3

before us is whether, in light of the statute's text and history . . . the Department's [1975 Third Party Employment] [R]egulation is valid and binding. We conclude that it is." *Id.* at 158 (internal citation to *Chevron* omitted).

After the Supreme Court's decision in *Coke,* several bills were introduced in Congress that would have overruled the decision by preventing the companionship exemption from applying to employees of third party employers. *See* "The Fair Home Health Care Act of 2007," H.R. 3582 and S. 2062 (110th Cong. 2007); "The Direct Care Job Quality Improvement Act of 2011," H.R. 2341 and S. 1273 (112th Cong. 2011); and "The Direct Care Workforce Empowerment Act of 2013," H.R. 5902 and S. 3696 (113th Cong. 2013). These bills, which would have limited the definition of companionship services, all had insufficient support to even reach a vote on the floor of the House or Senate, and thus never became law.

### 4. DOL's Amended Regulations

Ignoring these expressions of legislative intent, the DOL issued a "Final Rule" amending the companionship exemption regulations. 78 Fed. Reg. 60454 (Oct. 13, 2013).

The DOL's proposed revised version of the Third Party Employment regulation provided that:

> Third party employers of employees engaged in companionship services within the meaning of Section 552.6 may not avail themselves of the minimum wage and overtime exemption provided by Section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services.

*See proposed* 29 CFR § 552.109(a) [2015] *as stated in* 78 Fed. Reg. 60557. Notably, the DOL did *not* propose amending the definition of "employee" or any other term appearing in the statutory companionship exemption in order to exclude employees of third party employers from the companionship exemption; instead, the DOL said that third party employers may not "avail

themselves" of the companionship exemption that otherwise still applies to their employees. *See generally* 78 Fed. Reg. 60454, 60557.

The DOL's proposed revised Companionship Services Regulation modified the definition of "companionship services" to exclude employees who spent more than 20 percent of their time performing "care" services, regardless of the caregiver's employer. *See proposed* 29 CFR § 552.6(b) [2015] *as stated in* 78 Fed. Reg. 60557. The 20 percent limitation applied to any assistance with "activities of daily living" and/or "instrumental activities of daily living." *See id.* This radically changed the 1975 Companionship Services Regulation, which specifically applied to companionship employees who provided "fellowship, care, and protection" for elderly or infirm persons unable to care for themselves, and thus recognized that "care" is an integral part of the duties performed by employees subject to the companionship services exemption. 29 C.P.R. § 552.6 [1975].

The final rule indicated that the 2015 Third Party Employment Regulation and the 2015 Companionship Services Regulation were to go into effect on January 1, 2015. *See* 78 Fed. Reg. 60454, 60494.

### 5. Vacatur of 2015 Third Party Employment Regulation and 2015 Companionship Services Regulation by D.C. District Court

After the final rule was announced, the Home Care Association of America and other industry associations filed suit against the DOL and some of its individual officials in the U.S. District Court for the District of Columbia. *See generally Home Care Ass'n of Am., et al. v. Weil, et al.,* Case No. 14-cv-00967 (D.D.C.). The plaintiffs first argued that the 2015 Third Party Employment Regulation was an arbitrary and capricious exercise of the DOL's authority inconsistent with statutory language and congressional intent. *See Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, *1-2, 2014 U.S. Dist. LEXIS 176307 (D.D.C. 2014) ( "Home Care I").

5

On December 22, 2014 - before the effective date of the Final Rule's proposed new regulations - the D.C. District Court, applying a *Chevron* analysis, found that Congress had spoken clearly on the third party employer issue and concluded that the 2015 Third Party Employment Regulation, which contradicted the FLSA and congressional intent, "cannot survive." *Home Care I,* 76 F. Supp. 3d 138 at *19-20. The D.C. District Court also examined the *Coke* decision and *post-Coke* congressional rejection of efforts to amend the companionship exemption and determined that these supported the court's conclusion that the regulations "cannot stand." *See id.* at *20-23. As a result, the D.C. District Court vacated the regulation, stating: "Accordingly, the United States Department of Labor's Third Party Employ[ment] regulation, promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.109, **is hereby VACATED."** *Id.* at *24 (emphasis added).

### 6. Reversal by D.C. Circuit Court of Appeals

The DOL appealed the D.C. District Court's decisions vacating the 2015 Third Party Employment Regulation and the 2015 Companionship Services Regulation to the U.S. Court of Appeals for the District of Columbia Circuit. On August 21, 2015, the D.C. Circuit Court of Appeals issued a decision in which it disagreed with the D.C. District Court's analysis and announced that "we reverse the District Court's judgments and remand for the entry of summary judgment in favor of the Department [DOL]." *Home Care Ass'n of Am. v. Weil*, 799 F.3d. 1084, 25 Wage & Hour Cas. 2d (BNA) 289 (D.C. Cir. 2015) *("Home Care III").* Notably, the D.C. Circuit Court of Appeals confirmed that the D.C. District Court had "invalidated" the regulations. *Home Care III,* at *5-6.

### B. Ohio State Law

The Ohio Revised Code states that overtime must be paid to employees "subject to the exemptions of Section 7 and Section 13 of the 'Fair Labor Standards Act of 1938,' 52 Stat. 1060, 29

6

U.S.C.A. 207, 213, as amended." Ohio Rev. Code § 4111.03(A). The interpretation of the Ohio law is generally governed by interpretations of the FLSA. *See, Birch v. Cuyahoga County Probate Court,* 173 Ohio App3d. 696, 2007-Ohio-6189. (4th Dist.)

### III. PROCEDURAL HISTORY

Dillow filed her class and collective action complaints on June 6, 2016. The sole defendant was Home Care Network, Inc. ("Home Care"). The complaint was filed on behalf of Dillow and other similarly situated individuals. The complaint alleges violations of the FLSA and the Ohio Minimum Fair Wage Standards Act, R.C. § 4113.15. While much of this complaint is not pertinent to this partial motion for summary judgment, its allegations as to the effective date of the overtime requirements are very relevant.

The complaint alleges in paragraph 23 and 24 as follows:

> 23. Thus, beginning on January 1, 2015, domestic-service workers employed by third-party agencies or employers were no longer exempt from the FLSA's minimum wage and overtime requirements. *See* 29 C.F.R. 552.109(a) 2015.

> 24. Accordingly, as of January 1, 2015, all domestic-service workers employed by third-party agencies or employers are entitled to overtime compensation.

Consistent with those allegations, Plaintiff asked the class be certified for all domestic service employees of Home Care at any time from January 1, 2015 until April 30, 2016. Dillow worked for Home Care from June 26, 2003 until April 17, 2016. (Answer ¶ 9)

### IV. LAW AND ARGUMENT

#### A. The *Bangoy* case from this district is controlling

While there is admittedly a split among district courts on the issue of the effective date of the regulations discussed above in light of the initial vacation of those regulations, there is no

7

need for this court to resolve this conflict since there is controlling authority from this district in *Bangoy v. Total Home Care Solutions LLC,* S.D. Case No. 1;15-CV-573, 2015 WL 12672727. This court, per Judge Beckwith, in *Bangoy* held at p. 3 of its opinion as follows:

> *3 The Court concludes that THS is entitled to dismissal of Plaintiffs' FLSA claim. The district court in the Weil cases vacated the rule that purportedly required THS to pay Plaintiffs overtime wages before it could go into effect. In the Court's view, THS was entitled to rely on that decision in not paying Plaintiffs overtime for the interim period now at issue in this case. Any other conclusion would put THS, and other similarly-situated employers, in an untenable position. THS could have complied with the vacated rule at the risk of paying Plaintiffs overtime wages to which they were not entitled if the Court of Appeals affirmed the district court's judgment. Or, THS could have done what it did here, rely on the vacatur of the rule but then, according to Plaintiffs, be liable to them for FLSA damages if the Court of Appeals reversed the district court's judgment.

In its opinion, this court emphasized that the vacation of the regulation before its effective date made the regulation a nullity, rendering it unenforceable. This court also stressed the DOL's position that it would not bring enforcement actions for violations that occurred before the Court of Appeals reinstated the rule, holding that good administration mandates that the standards for public and private enforcement should be the same absent very good reasons. *See, Skidmore v. Swift,* 323 U.S. 134, 139-40, 65 S.Ct. 2339, 168 L.Ed. 2d 54 (1944); *Bangoy* at p. 3. There are no such reasons in this case.

### B. Judicial vacation prior to the effective date of the regulations renders them null and void

When the D.C. District Court vacated the 2015 Third Party Employment Regulation and the 2015 Companionship Services Regulation, it rendered those regulations null and void -- the regulations never went into effect. *See Home Care I,* 76 F. Supp. 3d at *24; *Home Care II,* 78 F. Supp. 3d at *20-21. Vacatur of a federal regulation "restores the status quo before the invalid rule took effect and the agency must 'initiate another rule making proceeding'" if it still seeks to pursue the objectives served by the vacated regulation. *Environmentl. Def. v. Leavitt,* 329 F. Supp. 2d 55, 64 (D.D.C. 2004). Because the

D.C. District Court vacated the 2015 Third Party Employment Regulation and the 2015 Companionship Services Regulation prior to their effective dates, the 1975 versions of those regulations remained in effect until November 12, 2015.

In an analogous situation, the district court in *MCI Telcoms Corp. GTE Northwest Inc.,* 41 F. Supp.2d. 1157 (D. Ore 1999) rejected the argument that FCC regulations should apply to events that occurred while the regulations had been vacated by the Eight Circuit which was subsequently reversed by the U.S. Supreme Court.  The court in *MCI* held that there was a crucial distinction between regulations that never went into effect to begin with and the new interpretation of a law that was in effect. *MCI* at p. 1163.  There is no question that the stay and vacatur were valid orders.  One wonders what the point of such orders is if a party must comply with the vacated regulation in case of reversal by a higher court.

Several other courts have reached similar holdings regarding the effect of a vacatur on a regulation.  *See, e.g., Environmental Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) (vacatur of an agency's rules "restores the status quo before the invalid rule took effect …"); *Alabama Power Co. v. United States EPA*, 40 F. 3d 450, 456 (D.C. Cir. 1994) ("…the effect of our vacatur of the regulation is to suspend the utilities' compliance obligation pending further rulemaking by the agency."); *Action on Smoking and Health v. Civil Aeronautics Board*, 230 U.S. App. D.C. 1, 713 F. 2d 795, 797 (D.C. Cir. 1983) ("the term 'vacate' means 'to annul; to cancel or rescind; to declare, to make, or to render void; to defeat; to deprive of force; to make of no authority or validity; to set aside'" and "Thus, by vacating or rescinding the rescissions proposed by ER-1245, the judgment of this court had the effect of reinstating the rules previously in force.").

Such rulings are consistent with cases granting injunctions prohibiting the implementation of rules by administrative agencies such as the DOL.  Such injunctions are

9

granted to preserve the status quo. *See, R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Administration,* 823 F. Supp.2d. 36, 52-53 (D.D.C. 2011); *Nevada v. United States Department of Labor,* E.D. Tex. 4:26-CV-00731, 2016 WL 6879615. As the new companionship regulations never went into effect, the status quo was the 1975 regulation. Any other interpretation will limit the utility of an injunction or stay as a procedural device. One would not bother to get an injunction if compliance with the enjoined rule is still required due the risk of an appeal.

    **C.**    **Cases from other districts are not binding on this court, and failed to fully consider either that the regulations never actually went into effect or the effect of the DOL policy statement limiting enforcement to after the Court of appeals decision**

The only authority from this court supports Home Care's motion for partial summary judgment. There is no need to go any further nor is there any reason to create in essence an inter-district split in the absence of any binding authority, especially since this court in *Bangoy* is the only court to fully consider the dispositive fact that the disputed regulations never actually went into effect before the stay.

Plaintiff will likely rely on *Kinkead v. Humana,* D. Conn. No. 3:15-cv-01637, 2016 WL 39550737 and *Cummings v. Bost, Inc.,* W.D. Ark. No. 2:14-Cv-02090, 2016 WL 65114103. Neither of these opinions is binding on this court. Furthermore, their reasoning is unpersuasive for two salient reasons. Neither *Kinkead* nor *Cummings* fully considered that the regulation never went into effect, instead simply applying the general rule that court decisions are to be retroactively applied. In addition, they disregarded the DOL action without giving a very good reason as to why a different rule should apply to the standards for public enforcement than those for determining private rights. It is one thing to disregard the DOL action and quite another to do so without giving *any* good reason for the variance between public enforcement and private rights.

10

For the foregoing reason, Home Care's motion for partial summary judgment should be granted and all claims for violation of the FLSA prior to November 12, 2015 should be dismissed.

        Respectfully submitted,

        */s/ Dale D. Cook*
        Dale D. Cook    (0020707)
        ISAAC WILES BURKHOLDER & TEETOR, LLC
        Two Minerva Place, Suite 700
        Columbus, Ohio  43215-5098
        Telephone:    (614) 221-2121
        Facsimile: (330) 365-9516
        Email:    dcook@isaacwiles.com
        Stuart A. Strasfeld    (0012399)
        ROTH, BLAIR, ROBERTS, STRASFELD & LODGE, L.P.A.
        100 East Federal Street, Suite 600
        Youngstown, Ohio  44503
        *Attorney for Defendant*
        *Home Care Network, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

*/s/ Dale D. Cook*
DALE D. COOK  (0020707)