UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RHONDA DILLOW,                          :    Case No. 1:16-cv-612
                                        :
      Plaintiff,                      :    Judge Timothy S. Black
                                        :
vs.                                     :
                                        :
HOME CARE NETWORK, INC.,                :
                                        :
      Defendant.                      :

**ORDER DENYING DEFENDANT'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT (Doc. 15)**

## I.    INTRODUCTION

This case is before the Court regarding Defendant's motion for partial summary

judgment filed December 16, 2016 (Doc. 15) and the parties' responsive memoranda

(Docs. 16, 20).  For the reasons set forth below, Defendant's motion for partial summary

judgment (Doc. 15) is **DENIED**.

## II.    BACKGROUND

Plaintiff Rhonda Dillow has brought this civil action against Defendant Home

Care Network, Inc., seeking remuneration for unpaid overtime on behalf of the following

proposed class:

> All domestic-service employees who (1) worked for Defendants at any
> time during the Relevant Time Period and (2) worked more than 40 hours
> in one or more workweeks during the Relevant Time Period.

(Doc. 20, at 1).

The impetus for this action was a recent change in the overtime pay requirements imposed by the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.* The FLSA generally requires employers to pay their employees 150% of their regular pay rate for all hours worked in excess of 40 hours per week. There are enumerated exceptions to this rule, however, and, in 1974, the FLSA was amended to state that "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves is exempt from the FLSA's overtime requirement." 29 U.S.C. § 213(a)(15).

The following year, the DOL issued regulations implementing the 1975 FLSA amendments, including the companionship exemption. Two of the 1975 regulations, in particular, are relevant to this case.

First, the "Third Party Employment" regulation explained that the statutory companionship exemption applied to caregivers "who are employed by an employer or agency other than the family or household using their services." 29 C.P.R. § 552.109. Second, the "Companionship Services" regulation defined the companionship services referenced by the statutory companionship exemption to mean "those services which provide fellowship, care, and protection" for elderly or infirm persons unable to care for themselves, excluding services performed by "trained personnel" including nurses. 29 C.P.R. § 552.6. The Companionship Services regulation also allowed employees who were exempt under the companionship exemption to perform "household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services." *Id.*

2

In October 2013, the DOL created a Final Rule amending the regulations as they relate to "companionship services" with an effective date of January 1, 2015. *See Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60454, 60455 (Oct. 1, 2013).  These new regulations held that domestic-service workers such as the named Plaintiff in this case who were employed by third-party agencies were no longer exempt from the mandatory overtime rules.  Several third-party employers of domestic workers brought suit against the DOL in the United States District Court for the District of Columbia; that court concluded that the DOL exceeded its rule-making authority in eliminating the FLSA exemption for home health workers and vacated the rule. *See Home Care Assoc. of Am. v. Weil*, 78 F.Supp.3d 123 (D.D.C. 2015).

On August 21, 2015, the Court of Appeals for the District of Columbia reversed the district court's vacatur.  *See Home Care Assoc. of Am. v. Weil,* 799 F.3d 1084, 1097 (D.C. Cir. 2015).  Following that decision, the DOL issued guidance stating that it would not institute enforcement proceedings for violations of the amended Final Rule until 30 days after the Court of Appeals issued a mandate making its opinion effective, which the appellate court subsequently did on October 13, 2015.  *See* 80 Fed. Reg. 55029 (Sept. 14, 2015).  The DOL then indicated that it would not bring enforcement actions for violations of the rule prior to November 12, 2015.  *See* Application of the Fair Labor Standards Act to Domestic Service: Dates of Previously Announced 30–Day Period of Non–Enforcement, 80 Fed. Reg. 65646 (Oct. 27, 2015).

The validity and enforceability of the DOL's new regulations regarding overtime for companionship services moving forward is not in dispute.  The issue before this Court

is when exactly those regulations became enforceable, otherwise known as the regulations' "effective date." Plaintiff contends that the regulations' listed effective date of January 1, 2015, is when they became enforceable, meaning that employers of affected individuals could be liable for all unpaid overtime worked since that date. Defendant contends that, because the regulations were invalidated by the D.C. District Court's ruling in *Weil* and were not reinstated before the October 13, 2015 mandate issued by the overturning appellate court, the effective date could not be before the issuance of the mandate.

### III. ANALYSIS

Generally, judicial decisions are applied retroactively. This principle was affirmed by the United States Supreme Court in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993). The Court in *Harper* stated:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. This rule extends *Griffith*'s ban against "selective application of new rules." 479 U.S., at 323, 107 S.Ct., at 713.Mindful of the "basic norms of constitutional adjudication" that animated our view of retroactivity in the criminal context, *id.,* at 322, 107 S.Ct., at 712, we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to "the particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule. *Beam, supra,* 501 U.S., at 543, 111 S.Ct., at 2447 (opinion of SOUTER, J.). Our approach to retroactivity heeds the admonition that "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." **2518 *American Trucking, supra,* 496 U.S., at 214, 110 S.Ct., at 2350 (STEVENS, J., dissenting).

*Harper*, 509 U.S., at 97.  Plaintiff argues that *Harper* requires this Court to find that the D.C. Circuit Court of Appeals's decision in *Weil* was retroactive, and that the DOL's new regulations concerning companionship services were effective and enforceable as of January 1, 2015, the regulations' listed effective date.

Defendant argues that *Harper* did not announce an absolute rule of retroactivity. "[W]hen a court announces a new rule of law but does not apply the new rule to the parties before it, a *Chevron Oil* analysis[1] is used to determine retroactivity so long as the retroactivity is not applied selectively."  (Doc. 18, at 2 (quoting *Nunez-Reyes v. Eric Holder, Jr.*, 646 F.3d 684, 698 (9th Cir. 2011)).  Defendant suggests that the D.C. Circuit Court of Appeals did not apply its ruling in *Weil* to the parties before the court at the time, and that a *Chevron* analysis of the DOL's new regulations is necessary to determine whether the law should apply retroactively or prospectively.

Defendant mischaracterizes the *Weil* ruling.  The question before the D.C. Circuit Court in *Weil* was whether the DOL's new regulations were a reasonable interpretation of the FLSA or whether they were arbitrary and capricious in violation of the standard set forth by *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  The D.C. Circuit Court of Appeals held that the regulations were a reasonable interpretation of the FLSA under *Chevron* and that they were neither arbitrary nor capricious.  *Weil*, 799 F.3d, at 59–61.  This Court fails to see how the *Weil* court did not apply its ruling to the parties before it at the time.  *Weil* held that the regulations in question that had already

---

[1] In *Chevron Oil*, a decision predating *Harper*, the Supreme Court found that prospective application of a law required: (1) a new principle of law; 2) support for prospective application in the history of the law; and 3) that retroactive application be inequitable.  *Chevron Oil v. Huson*, 404 U.S. 97 (1971).

been issued were valid and enforceable; it did not find any new interpretation of the law that would only apply towards future DOL regulations.  In light of the *Weil* ruling's retroactive application, this Court finds that the enforceability of the DOL regulations at issue in this case is applied retroactively as well, and that their effective date is January 1, 2015.

This exact issue has been considered by several district courts, and a split has developed.  A court in this district was the first district court to decide the effective date of the DOL's new rule regarding overtime regulations for companionship services, holding that the defendant employers in that case were not liable for unpaid overtime for affected employees prior to the D.C. Circuit Court of Appeals's mandate in *Weil* in October 2015.  *Bangoy v .Total Homecare Solutions, LLC*, 2015 WL 12672727 (S.D. Ohio Dec. 21, 2015).  The *Bangoy* opinion found that forcing employers to comply with the DOL's overtime rule while it was vacated and on appeal would put them "in an untenable position."  *Id.* at *3.  The court in *Bangoy* was further persuaded by the DOL's decision not to bring enforcement actions for unpaid overtime that occurred during the appeal process.  Finally, the *Bangoy* court noted that the plaintiffs in that case "cite[d] no authority" for their argument.[2]

Since the *Bangoy* decision, several district court cases examining the exact same issue have ruled that employers are liable for unpaid overtime wages to employees affected by the new regulations from the January 1, 2015 implementation date, even

---

[2] The Court has examined the briefings submitted by the parties related to the summary judgment granted by the *Bangoy* court.  The Plaintiff's response brief was very sparse, citing only to the *Weil* decision.  As a result, the opinion in *Bangoy* contained no discussion of several relevant cases, including *Harper*, which every court to subsequently rule on this issue has found to be a critical case (an assessment with which this Court agrees).

though the regulations were vacated by the D.C. District Court for much of that year. In

*Kinkead v. Humana*, a district court in Connecticut considered this very issue and held

that January 1, 2015 was the regulations' effective date, despite the fact that defendants

had relied upon the D.C. district court opinion that was subsequently reversed. *Kinkead* at

*3; *see also Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 91 & n. 7 (2d

Cir.2009) (despite fact that "the parties relied on [prior overruled decision] when

structuring their transactions, the Supreme Court has held that a reliance interest is

insufficient to overcome the presumption of retroactivity set forth in *Harper*"). The

*Kinkead* court noted that:

> The DOL allowed more than a year from its promulgation of the new rule
> in 2013 until its effective date in 2015; defendants had ample notice of the
> obligations to be imposed by the new rule. Although defendants might have
> hoped that the district court's decision would spare them from having to pay
> overtime, they were doubtlessly aware of a likelihood that the D.C. Circuit
> would do just what appellate courts often do—reverse the decision of a
> district court.

*Kinkead* at *3. In *Lewis–Ramsey v. The Evangelical Lutheran Good Samaritan Society*,

an Iowa district court also held that January 1, 2015 is the regulations' effective date,

even though the defendants argued it would be unfair to ignore the district court's vacatur

of the Final Rule and "create liability where none previously existed." *Lewis–Ramsey v.*

*The Evangelical Lutheran Good Samaritan Soc'y*, Case No. 3:16–cv–26–RP–CFB, at 8

(S.D. Iowa September 21, 2016). In rejecting this "unfairness" argument, the *Lewis—*

*Ramsey* court stated:

> This case presents nothing out of the ordinary when it comes to the
> authority of a Court of Appeals to render null and void decisions of the
> district court with which it disagrees. Indeed, it strikes the Court as far

> more "unfair" to allow Defendant to escape liability for nearly a year's
> worth of overtime wages based on a district court decision that was
> ultimately deemed to be error.

*Id.*  Similarly, in *Cummings v. Bost, Inc.*, an Arkansas district court rejected a defendant's argument that it would be unfair to use January 1, 2015 as the regulations' effective date. *Cummings v. Bost, Inc.*, No. 2:14-CV-02090, 2016 WL 6514103, at *6 (W.D. Ark. Nov. 1, 2016).  In *Cummings*, the court noted that it would be "contrary to general principles of fairness" to allow the defendant to duck liability for overtime wages based on an erroneous decision that was reversed.  *Id.*  The fairness principle at issue should be obvious—a party who relies upon the wrong interpretation of the law should not be rewarded over a party who relies upon the correct interpretation.

The Court notes as an initial matter that Defendant's assertion that this Court is foreclosed from ruling in Plaintiff's favor because "[t]he *Bangoy* case is controlling" is incorrect.  (Doc. 15, at 7).  "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene,* 563 U.S. 692, 709 (2011).

Defendant argues that the cases cited by Plaintiff should not persuade this Court over the *Bangoy* decision because the cases cited by Plaintiff "failed to adequately consider the effect of [the] DOL pronouncement" that it would begin enforcement of the new regulations November 12, 2015.  (Doc. 18, at 5).  Defendant's position is that the DOL's decision not to enforce the new regulations until November 12, 2015 should persuade the Court to find that the regulations only apply prospectively from the date of the D.C. Circuit Court's mandate in *Weil.*  The Southern District of Ohio court that issued

8

the *Bangoy* opinion agreed with this assertion, holding that "[g]ood administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons." *Bangoy,* 2015 WL 12672727, at *3 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)). However, Plaintiff cites no authority stating that the DOL's enforcement decisions are binding on the Court, and the Court is persuaded by the totality of the circumstances to side with the growing majority of district courts that have found that the effective date of the regulations at issue is the effective date for purposes of a private suit. The DOL has more discretion in choosing when and how to enforce its regulations than a reviewing court does; in this circumstance, it is clear that the retroactive effect of the D.C. Circuit Court's decision in *Weil* requires this Court to find that the new overtime regulations for companionship services were in effect as of January 1, 2015.

Defendant's reply to its motion for summary judgment states that "[r]etroactive application is inequitable in that it requires Defendant to go back in time to comply with regulations that had technically not gone into effect." (Doc. 18, at 4). The Court is unpersuaded by this argument. It is disingenuous to suggest that Defendant, or any other similarly situated party, could not anticipate that there was a significant possibility the D.C. District Court's decision in *Weil* would be overturned on appeal. That is a natural and foreseeable consequence of the appellate process. The Court sees greater inequity in suggesting that an early victory in court could shield a defendant from any obligation for the length of the appellate process, even if that victory was based on a flawed

understanding of the law at issue. That holding would in fact create a perverse incentive for a party that has won such an early victory to drag out the appeals process as long as possible, perhaps through repeatedly requested extensions or through other means. Even were a defendant to ultimately lose its appeal, it could save a considerable amount of money based on how many total hours of overtime it avoided paying through its delay tactics. The more equitable holding is that any party involved in ongoing litigation should be prepared to be responsible for the implications of a retroactive ruling not in its favor at the appellate level.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, the Court finds that the effective date of the regulations at issue in this case is January 1, 2015. Defendant's motion for summary judgment (Doc. 15) is therefore **DENIED**.

**IT IS SO ORDERED.**

Date:  2/27/17

_____
Timothy S. Black
United States District Judge