**In the United States District Court
for the Southern District of Ohio
Western Division**

_____

| | |
|---|---|
| RHONDA DILLOW, | |
| *On behalf of herself and those similarly situated*, | Case No. 1:16-cv-612 |
| Plaintiff, | Judge Timothy S. Black |
| v. | |
| HOME CARE NETWORK, INC., *et al.*, | |
| Defendants. | |

_____

**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL SETTLEMENT APPROVAL AND
GRANTING PLAINTIFF'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES**
_____

Before the Court are Plaintiff's unopposed motion for final approval of the class action settlement (Doc. 62), Plaintiff's motion for an award of attorneys' fees and expenses (Doc. 63), and the oral arguments presented by counsel at the fairness hearing on September 18, 2018. For the reasons stated below, the Court grants both motions.

## I. BACKGROUND

### a. Litigation History

This is a wage and hour lawsuit brought on behalf of a class of home healthcare workers. Plaintiff alleges that she and similarly situated workers were not paid overtime wages from January 1, 2015 until approximately March 2016. (Doc. 24, ¶¶ 39–40).

1

Plaintiff alleged that, due to change in the Department of Labor's Regulations, effective January 1, 2015, she and her fellow home healthcare workers were entitled to overtime wages under the Fair Labor Standards Act and the Ohio Minimum Fair Wages Standard Act. (Doc. 24, Counts 1 and 2). Moreover, Plaintiff alleges that because Defendants failed to pay those wages, they also violated the Ohio Prompt Pay Act, O.R.C. § 4113.15. (Doc. 24, Count 3).

On December 16, 2016, Defendants moved for partial summary judgment on the issue of when the new DOL Regulation became effective. (Doc. 15). The Court previously detailed the background of the regulatory change. (Doc. 26). In sum, the DOL amended its regulations related to "companionship services," thereby entitling certain workers to overtime wages under the FLSA. *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60455 (Oct. 1, 2013). The amendments' effective date was January 1, 2015. *Id.* Because the United States District Court for the District of Columbia held the DOL had exceeded its rule-making authority, but was later reversed, there was a question as to when the amendment truly became effective. (Doc. 26). This Court held that, because judicial decisions apply retroactively, the amendments' effective date was January 1, 2015. *Id.* Accordingly, the Court denied Defendants' Motion for Partial Summary Judgment. *Id.*

On January 27, 2017, Plaintiff moved for conditional certification of a collective action and Rule 23 class certification. (Doc. 20). On June 5, 2017, the Court granted Plaintiff's motion. (Doc. 31).

Following the Court's Order granting certification, Plaintiff's counsel sent notice of this lawsuit to approximately 305 class members. (Doc. 62, PAGEID 1509). Seventy-one individuals joined the lawsuit or about 23% of the total class. *Id.* One person excluded herself. (Doc. 40).

On March 27, 2018, Plaintiff moved to preliminarily approve the parties' settlement agreement. (Doc 58). On April 17, 2018, the Court granted Plaintiff's motion. (Doc. 60). Plaintiff then sent notice to all class members regarding the settlement. (Doc. 62, PAGEID 1510). No class members objected or excluded themselves. *Id.*

### b. Payments to Class Members

This case has one unusual aspect relevant to evaluating the parties' settlement agreement—Defendants elected to pay class members their unpaid overtime wages prior to the parties reaching a formal settlement agreement. (Doc. 62, PAGEID 1508–9). These payments occurred in two stages. *Id.*

First, at around the same time that Plaintiff filed this lawsuit, Defendants began to pay class members for any overtime wages earned from approximately October 13, 2015 to April 2016. *Id.* Defendants made those payments, totaling $122,315.30 over the course of three months. *Id.* Though there is some dispute among the parties as to whether these payments were made as a result of this lawsuit, neither party counts these payments as a benefit Plaintiff achieved for the class for purposes of this settlement and proposed fee award.

Second, following the Court's denial of Defendants' motion for partial summary judgment, Defendants voluntarily paid the class members an additional $435,252.20 in overtime wages earned from January 1, 2015 to approximately October 2015. *Id.*

The Court notes that Defendants' handling of this situation and the Court's February 27, 2017 Order is commendable. In doing so, the Court does not disagree that FLSA settlements "generally require approval by a district court or the United States Department of Labor." *Johnson v. Kestrel Eng'g, Inc.*, No. 2:15-cv-2575, 2016 WL 7655249, at *1 (S.D. Ohio Sept. 22, 2016). However, Defendants' actions in promptly addressing the claims in this case should not go unrecognized.

### c. The Settlement Agreement

The parties' settlement agreement obligates Defendants to pay $113,224.67 (in addition to the above amounts) allocated to three categories of payments and damages. (Doc. 62, PAGEID 1511).

First, Defendants will pay $14,224.67 to class members for unpaid overtime wages. *Id.* This, combined with the payments noted above will mean that class members, regardless of whether they joined this lawsuit, will receive 100% of their unpaid overtime wages. *Id.*

Second, Defendants will pay $56,000 divided equally among the 197 class members who have at least one pay period of alleged unpaid overtime wages during the October 2015 to April 2016 time period. *Id.* Each of those class members will receive an additional $284.26 to account for Ohio Prompt Pay Act liquidated damages. *Id.*

Third, Defendants will pay $43,000 divided among the class members who joined the lawsuit. *Id.* This amount will be divided on a prorated basis, based on each class members' alleged FLSA liquidated damages. *Id.* This will give each opt-in class member approximately 35.5% of their alleged FLSA liquidated damages. *Id.*

In addition to the above, Defendants have agreed to pay the named Plaintiff an $8,500 service award, subject to this Court's approval. *Id.* Finally, in addition to these amounts, Defendants have agreed to pay the class's reasonable attorney's fees and expenses, as determined by this Court. *Id.* These two issues are discussed in further detail below.

## II. ANALYSIS

### a. The parties' settlement is fair and reasonable.

Before a district court approves a settlement, the Court must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, Case No. 2:11-cv-1061, 2013 WL 2295880, at *4, 2013 U.S. Dist. LEXIS 74201, at *9 (S.D. Ohio May 24, 2013) (citation omitted). In the Sixth Circuit, district courts consider seven factors in determining whether a class settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). As set forth below, each of these factors weighs in favor of approving the parties' settlement.

### i. The Risk of Fraud or Collusion

The evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length negotiations conducted by experienced counsel on both sides. Nothing before the Court suggests that the Settlement is the result of fraud or collusion.

The Court notes that, at the fairness hearing, counsel described the negotiations as involving numerous, detailed settlement proposals, which included law and argument, and additional oral negotiations. This is indicative of arms-length negotiations. Moreover, the parties reached the settlement after the Court decided two significant legal issues in the case—class certification and Defendants' motion for partial summary judgment—and after the parties conducted the discovery necessary to evaluate the parties' claims and defenses. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair").

### ii. The Complexity, Expense and Likely Duration

From the outset, the Court notes that wage and hour class and collective actions, such as this, are inherently complex and time-consuming. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014). This case was no exception.

This case also presented a relatively novel legal question related to the DOL's regulatory change, noted above. During the fairness hearing, counsel for both parties noted that an appeal would have been likely on this issue because the Sixth Circuit has

not yet addressed the issue. *See, e.g., Scheck v. Maxim Healthcare Services, Inc.*, 5:17-cv-2480, 2018 WL 3772728, at *2 (N.D. Ohio Aug 9, 2018).

Resolving these issues and the remaining discovery, procedural, merits, and damages questions would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this weighs in favor of the settlement.

### iii. The Amount of Discovery Engaged in by the Parties

The parties reached their settlement after having exchanged the most crucial piece of evidence in this case—Defendants' payroll records. (Doc. 62, PAGEID 1514). While the parties did not conduct any depositions, in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims. The Court finds that this settlement resulted from informed negotiations by experienced counsel.

### iv. The Opinions of Class Counsel and Class Representatives

The Class Representative, present at the fairness hearing, approves the Settlement Agreement. Plaintiff's counsel believes that the settlement is fair, adequate and reasonable. (Doc. 62, PAGEID 1514). This factor weighs in favor of approval. *See In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 WL 717519, at *11, 2011 U.S. Dist. LEXIS 17255, at * 55 (E.D. Mich. Feb. 22, 2011) ("Class counsel's judgment that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the settlement") (internal quotations and citations omitted).

7

### v. The Reaction of Absent Class Members

The class's reaction strongly supports approval. Out of 305 class members, none rejected, objected, or excluded themselves from the settlement. One class member excluded herself from the case during the original opt-in period (Doc. 40), and prior to a settlement being reached, which does not bear on the class's reaction to the settlement.

### vi. The Public Interest

Public policy favors settlement of class action lawsuits. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014). This case is no exception. The settlement provides relief to the class members, avoids further litigation in a complex case, and frees the Court's judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

### vii. Overall Settlement Terms

The Court finds that the settlement provides a fair, adequate, and reasonable resolution to this lawsuit. Combined with Defendants' prior unpaid wage payments, the agreement provides class members, regardless of whether they joined the case, 100% of their unpaid overtime wages. (Doc. 62, PAGEID 1513). The agreement also provides class members who joined the case an additional 35.5% of their unpaid wages as FLSA liquidated damages. *Id.* Finally, the agreement provides an additional $284.26 to those class members with at least one pay period after October 2015. The Court finds this is a good result for the class members and appropriately accounts for the risk of going forward with the litigation.

The Court **GRANTS** Plaintiff's unopposed motion for final approval of the parties' settlement agreement.

### b. Fees, Expenses, and Contribution Awards

#### i. Plaintiff's counsel are entitled to their requested fee

Plaintiff's counsel have requested an order approving the payment of $185,658.73 in attorney's fees. (Doc. 63). In this case, the settlement agreement provides that the attorneys' fees will be paid separately from and in addition to the money going to the class. (Doc. 63, PAGEID 1537).

Defendants agree that Plaintiff's counsel are entitled to a fee award but dispute the amount of the award. (Doc. 64). Defendants suggest that "any fee should be at most $76,000." *Id.* at PAGEID 1574.

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h). *See Lowther v. AK Steel Corp.*, Case No. 1:11-cv-877, 2012 WL 6676131, at *1, 2012 U.S. Dist. LEXIS 181476, at * 2 (S.D. Ohio Dec. 21, 2012). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

### 1. The Court adopts the percentage approach.

In the Sixth Circuit, district courts have the discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, as well as the particular circumstances of the actual cases pending before the Court, using either the percentage or lodestar approach. *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d at 761. In the Southern District of Ohio, the preferred method is "to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank,* Case No. 2:08-cv-1119, 2011 WL 292008, at *13, 2011 U.S. Dist. LEXIS 7829, at *34 (S.D. Ohio Jan. 26, 2011) (citation omitted).

Although this case is not precisely a common fund case (as the funds going to pay for attorneys' fees and costs are to be paid under the Settlement Agreement separate and apart from the money that goes to the wages and liquidated damages to the class members), nonetheless, the common fund analysis properly applies. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202629, at *1 (S.D. Ohio Jan. 10, 2011). The Court finds that the percentage approach is proper in this case.

To determine the amount of the "fund" for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs. As the Sixth Circuit explained, when conducting a percentage of the fund analysis, "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs

of administration)." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). To determine the amount of the benefit conferred, courts look to the total amount made available to the class, rather than the amount ultimately claimed by class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

Here, the settlement will result in a total benefit to the class of at least $745,457.23: $556,976.87 in payments to class members, $185,658.73 in attorneys' fees, and $2,821.63 in expenses. Plaintiff's fee request is 24.9% of this amount. Defendants argue that the fee and expense award should not be considered when calculating the common fund amount. (Doc. 64, PAGEID 1571). The Sixth Circuit, however, has instructed that the Court should consider those items in the calculation. *Gascho*, 822 F.3d at 282.

Even if the Court did not consider fees and expenses as part of the class's benefits, Plaintiff seeks 33% of the amount directly going to the class members. Under either calculation, whether 24.9% or 33%, this Court finds Plaintiff's request is reasonable and well within the ranges of fees typically approved by courts in the Sixth Circuit. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001) ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund").

## 2. The *Ramey* factors

In reviewing the reasonableness of the requested fee award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196. Here, each of these factors weighs in favor of granting the requested fee.

First, Plaintiff's counsel's work resulted in significant benefit to class members whereby each class member will receive at least 100% of their unpaid wages, and, in many cases, will receive more. The settlement provides tangible relief to class members now and eliminates the risk and uncertainty parties would otherwise incur if this litigation were to continue. The fact that there have been no opt-outs to the settlement and no objections demonstrates that class members recognize the settlement's substantial benefit. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) ("a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate").

Second, the Court finds that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2:15-cv-1066, 2017 WL 2838148, at *8, 2017 U.S. Dist. LEXIS 102621, at * 26 (S.D. Ohio June

30, 2017) (citation omitted). This is particularly true in the wage and hour context, where often, as here, class and collective actions allow a large number of low-wage workers recover unpaid wages. Here, Plaintiff's counsel's effort resulted in a tangible reward for the class members. Many of the class members would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant. *Id.* Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

Third, despite the risks associated with prosecuting this case, Plaintiff's counsel litigated this matter on a wholly-contingent basis with no guarantee of recovery over a period of more than two years. (Doc. 63, PAGEID 1542).

Fourth, a lodestar cross-check, while unnecessary, also supports Plaintiff's counsel's fee request. *See Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018). Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Gascho*, 822 F.3d at 279 (citation omitted). The Court then has the discretion to enhance the lodestar with a separate multiplier that can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. *Id.* at 279, 280.

Here, Plaintiff's counsel expended 234.3 hours litigating this case. (Doc. 62-4, PAGEID 1532). Defendants do not dispute the reasonableness of the amount of hours Plaintiff's counsel expended, nor their overall lodestar of $63,978. (Doc. 64, PAGEID

13

1569). Defendants note that "[d]espite a much higher hourly rate, this amount is actually fairly close to the defense costs for the case, demonstrating that it represents the actual cost to litigate the case." *Id.* Defendants dispute, however, at least one of Plaintiff's counsel's hourly rates and the lodestar multiplier. *Id.* at PAGEID 1573.

With respect to the hourly rates used in this case by Plaintiff's counsel's primary timekeepers, the Court finds the rates to be reasonable in light of counsel's experience, skill, and areas and level of expertise. In making this assessment, the Court uses its own experience and knowledge of the relevant legal market, Plaintiff's submissions (Docs. 63, 63-3, 63-4), counsel's arguments at the fairness hearing, and counsel's conduct during this litigation. Moreover, the Court considered the Rubin Committee rates, adjusted for 2018.

| Attorney | Years in Practice | Requested Rate | Rubin Rate |
|---|---|---|---|
| Mike Lore | 25 | $675 | $506 |
| Andy Biller | 13 | $400 | $448 |
| Andrew Kimble | 7 | $325 | $380 |
| Eric Kmetz | 3 | $250 | $283 |

Using Plaintiff's counsel's customary hourly rates, the proposed fee award is approximately 2.9 times the lodestar. The Court finds that this is well within the acceptable range of multipliers for cases such as this. *See, e.g., Swigart*, 2014 WL 3447947, at *6 (finding a 2.57 multiplier was appropriate in an FLSA class/collective action); *see also Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Castillo v. Morales, Inc.*, No. 2:12-

cv-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (holding that a 2.5 multiplier is "typical of lodestar multipliers in similar cases").

Fifth, as noted above, this was a complex wage and hour class/collective action that included a relatively novel legal question. The Court finds that this factor weighs in favor of approval.

Sixth, and finally, Plaintiff and Defendants are represented by highly experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. (*See* Docs. 62-2; 63-4; 64-1). Plaintiff's counsel has substantial experience in wage-and-hour litigation. *Castillo*, 2015 WL 13021899, at *7 (referring to Mr. Biller).

For these reasons, the Court determines the fees requested are reasonable, and **GRANTS** Plaintiff's Counsel's request for fees in the amount of $185,658.73.

### 3. Plaintiff's counsel are entitled to reimbursement of expenses.

Under the common fund doctrine, Plaintiff's counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.* (quotation omitted).

Here, Plaintiff's counsel request $2,821.63 in expenses that have been incurred prosecuting this case. (Doc. 63, PAGEID 1536). The limited expenses primarily include filing fees and class notice-related fees. Upon review, all of Plaintiff's Counsel's

expenses were reasonable and necessary in connection with litigating and resolving this case and are therefore reimbursable. Defendants do not dispute that the fees are reasonable and reimbursable.

Accordingly, the Court **GRANTS** Plaintiff's Counsel's request for $2,821.63 in expenses.

### ii. The class representative is entitled to a contribution award.

Under the terms of the settlement agreement, Plaintiff requests a service award of $8,500. Courts typically authorize contribution (or "incentive" awards) to class representatives for their often-extensive involvement with a lawsuit. *See Estep v. Blackwell*, Case No. 1:06-cv-106, 2006 WL 3469569, at *5–6, 2006 U.S. Dist. LEXIS 89360, at * 15 (S.D. Ohio Nov. 29, 2006) (citations omitted). Such compensation to named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case. *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997).

Here, Plaintiff contributed her efforts to the lawsuit by providing information and documents to her counsel, remaining informed and involved throughout the litigation, contacting and consulting her counsel concerning the litigation, reviewing documents and settlement proposals, and was willing to testify at a trial. During the fairness hearing, Plaintiff's counsel noted that, even with the incentive award, Plaintiff will receive less money than some of the class members that she helped through this lawsuit.

16

The Court finds that, only through Plaintiff's efforts did a large group of low-wage workers receive a substantial amount of unpaid wages and liquidated damages. Plaintiff's efforts furthered the important public policies underlying the Fair Labor Standards Act. The Court further finds that it is appropriate to reward plaintiffs, particularly in wage and hour cases, who obtain excellent, tangible benefits for their fellow workers. In light of these considerations, the Court finds that the proposed service award of $8,500 is modest.

Accordingly, the Court **GRANTS** Plaintiff's request for a service award of $8,500.

### III. CONCLUSION

Based upon the foregoing, Plaintiff's unopposed motion for final settlement approval (Doc. 62) and Plaintiff's motion for an award of attorneys' fees and expenses (Doc. 63) are **GRANTED**. Accordingly:

1. Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on all of the parties' submissions, the settlement agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class members to the settlement agreement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the class members.

2. The terms and provisions of the Settlement Agreement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement Agreement will result in substantial savings of time, money and effort to the Court and the parties, and will further the interests of justice.

3. All class members who have not timely and validly filed opt-outs are thus class members who are bound by this Judgment and by the terms of the Settlement Agreement.

4. Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action.

5. The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Plaintiff's counsel in prosecuting the claims on behalf of the class members. Plaintiff participated in the Action, acted to protect the Class, and assisted her counsel. The efforts of Plaintiff's counsel have produced the Settlement Agreement entered into good faith, and which provides a fair, reasonable, adequate, and certain result for the Class. Plaintiff's counsel have made application for an award of $185,658.73 in attorneys' fees and $2,821.63 in expenses incurred in the prosecution of the Action on behalf of themselves and the other Plaintiff's counsel. The combined total of the award is $188,480.36, which the Court finds to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $188,480.36 as attorneys' fees and expenses. Plaintiff's counsel shall be responsible for distributing and allocating the Attorneys' Fees and Expenses award to Plaintiff's counsel in their sole discretion. Further, Plaintiff is entitled to a fair, reasonable and justified service award of $8,500, to be paid by Defendant.

6. The Court hereby dismisses the Action with prejudice, and all Released Claims against each and all Released Persons, and without costs to any of the parties as against the others.

7. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto.

8. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

Date: 10/3/18

_Timothy S. Black_
Timothy S. Black
United States District Judge